# 25-1477

# United States Court of Appeals
# for the First Circuit

---

STATE OF RHODE ISLAND, et al.,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, in his official capacity, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Rhode Island

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION FOR STAY PENDING APPEAL

---

PETER F. NERONHA
 *Attorney General of Rhode Island*
150 South Main Street
Providence, Rhode Island 02903

ANNE E. LOPEZ
 *Attorney General of Hawaiʻi*
425 Queen Street
Honolulu, Hawaiʻi 96813

LETITIA JAMES
 *Attorney General of New York*
28 Liberty Street
New York, New York 10005
(212) 416-6347

Dated: June 9, 2025

*(See signature pages for complete counsel listing.)*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 3

    A.   The Dismantling of Three Congressionally Created Agencies ................................................................................. 3

    B.   Proceedings in the District Court ................................... 6

ARGUMENT ...................................................................................... 9

I.    DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL ....................................................................... 9

    A.   Defendants' Jurisdictional Arguments Lack Merit. ............. 10

        1.   Plaintiffs have standing ................................................. 10

        2.   The Tucker Act does not divest the district court of jurisdiction ................................................................. 12

        3.   The Civil Service Reform Act does not divest the district court of jurisdiction ........................................... 16

    B.   Defendants' Actions Are Subject to Review Under the Administrative Procedure Act. ................................................. 18

    C.   Defendants' Actions Are Likely Unconstitutional. ................. 22

II.    DEFENDANTS HAVE NOT SHOWN IRREPARABLE INJURY ........... 24

III.    THE REMAINING FACTORS WEIGH STRONGLY AGAINST A STAY ..... 26

CONCLUSION ................................................................................. 27

# INTRODUCTION

Defendants are not entitled to the "extraordinary remedy," *Nken v. Holder*, 556 U.S. 418, 428 (2009), of a stay pending appeal. Plaintiff States challenge defendants' attempts to dismantle three federal agencies—the Institute of Museum and Library Services (IMLS), the Minority Business and Development Agency (MBDA), and the Federal Mediation and Conciliation Service (FMCS)—without congressional approval or any reasoned explanation.[1] The U.S. District Court for the District of Rhode Island (McConnell, J.) issued a preliminary injunction order specifically tailored to undo defendants' unlawful actions and to prevent defendants from attempting to unlawfully implement the executive order and dismantle

---

[1] Plaintiffs-appellees are the States of Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Massachusetts, the People of the State of Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Washington, and Wisconsin. Defendants-appellants are IMLS, MBDA, FMCS, the Office of Management and Budget (OMB), Keith E. Sonderling, in his official capacity as Acting Director of IMLS, Madiha D. Latif, in her official capacity as Deputy Under Secretary of Commerce for Minority Business Development, Howard Lutnick, in his official capacity as Secretary of Commerce, Gregory Goldstein, in his official capacity as Acting Director of FMCS, Russell T. Vought, in his official capacity as Director of OMB, and Donald J. Trump, in his official capacity as President of the United States.

the agencies again during the pendency of this case. This Court should decline to stay the preliminary injunction.

First, defendants are unlikely to succeed on the merits of their appeal. Defendants barely defend the legality of their actions, instead raising arguments against judicial review of those actions. Defendants contend that plaintiffs lack standing, that plaintiffs' claims are precluded by statute, that defendants' actions are unreviewable under the Administrative Procedure Act (APA), and that defendants' statutory violations cannot give rise to a constitutional claim. The district court rejected each of these arguments and defendants identify no error in the district court's thorough, well-reasoned opinion.

Second, defendants cannot show irreparable harm from an order that seeks to undo and to prevent future unlawful action. And they do not meaningfully dispute the evidence of irreparable harm that *plaintiffs* have experienced and would continue to experience absent injunctive relief. For similar reasons, the public interest is best served by ensuring that the agencies continue to function in accordance with statutory and constitutional mandates while this litigation proceeds.

## BACKGROUND

### A.    The Dismantling of Three Congressionally Created Agencies

This case involves three federal agencies, each of which serve critical and statutorily mandated functions.

First, IMLS supports museums and libraries across the United States by disbursing federal funds and providing other forms of technical assistance. *See* 20 U.S.C. §§ 9121-9165, 9171-9176. (Compl. ¶ 56 (Apr. 4, 2025), ECF No. 1.) Second, MBDA is responsible for facilitating the growth of minority businesses through various forms of assistance. *See* 15 U.S.C. §§ 9522, 9523(a)(1)-(3). (Compl. ¶ 89.) Finally, FMCS is responsible for "assist[ing] parties to labor disputes in industries affecting commerce to settle such disputes through conciliation and mediation." 29 U.S.C. § 173(a). For the 2025 fiscal year, Congress appropriated $294,800,000 to IMLS, $68,250,000 to MBDA, and $53,705,000 to FMCS. *See* Full-Year Continuing Appropriations and Extensions Act 2025 §§ 1101(a)(2), (8), Pub. L. No. 119-4, 139 Stat. 9 (2025).

On March 14, 2025, just one day before signing the Continuing Appropriations Act, the President issued an executive order that directed seven federal agencies, including IMLS, MBDA, and FMCS, to dramatically

curtail their operations. *See* Exec. Order No. 14,238, Continuing the Reduction of the Federal Bureaucracy § 2(a) (Mar. 14, 2025), 90 Fed. Reg. 13043 ("*Reduction* EO"). The agencies were ordered to eliminate all "non-statutory components and functions . . . to the maximum extent consistent with applicable law," and to "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." *Id.* The order also instructed OMB to deny the agencies authorization to spend federal funds for any functions beyond the minimum required by statute. *See id.* § 2(c). All of the targeted agencies were required to report within one week that they had achieved "full compliance" with the *Reduction* EO. *Id.* § 2(b).

Before the *Reduction* EO, IMLS had a staff of approximately seventy-seven employees. (Compl. ¶ 65.) Within weeks, IMLS's staff was cut to "a skeleton crew" of twelve. (*Id.* ¶ 69.) The agency told employees that the agency would be "stripped down to the studs" (ECF No. 3-40 ¶ 6), and notified state librarians that "all [IMLS] staff are going to be placed on administrative leave" (Compl., Ex. B (Mar. 31, 2025), ECF No. 1-2). In just one day, IMLS terminated over 1,000 grants—each termination

containing a generic statement citing the *Reduction* EO as its justification. (*See* ECF No. 35-3 ¶ 5.)

Following the *Reduction* EO, MBDA placed nearly all of its staff on administrative leave and notified employees that it was "abolishing all the" forty-nine positions in the agency. (ECF No. 35-4 ¶ 4; Compl. ¶ 96.) Left virtually without staff, MBDA (i) terminated all preexisting grant awards, (ii) ceased posting new grant solicitations, (iii) stopped collecting data or engaging in required communications with MBDA centers, and (iv) could not staff a regional office for each region of the country as required by statute. 15 U.S.C. § 9502(e)(2)(A). (*See* ECF No. 3-41 ¶¶ 9-14.)

Similarly, FMCS placed nearly all of its employees on administrative leave after the *Reduction* EO, and announced that it would cease "all Public Sector work" as of April 18, 2025. (Compl. ¶¶ 130, 134; ECF No. 1-4.)

**B.    Proceedings in the District Court**

In April 2025, plaintiff States filed this action and moved for a preliminary injunction to enjoin defendants' implementation of the *Reduction* EO.[2]

In support, plaintiffs submitted dozens of declarations explaining the steps that defendants have taken to dismantle IMLS, MBDA, and FMCS, and cataloguing how States have been or will be harmed in consequence. For example, the drastic cuts at IMLS resulted in the termination of grants to numerous States (*see* ECF Nos. 3-3, 3-4, 3-34); disrupted state library programs (ECF No. 3-3); jeopardized plaintiffs' abilities to hire and pay staff (ECF Nos. 3-3, 35-1); and delayed important state projects (ECF No. 35-6). Similarly, many States reliant on MBDA grants had their grants terminated, which inflicted harm such as displacing students and staff (ECF Nos. 3-11 ¶¶ 16-17); halting essential programs (ECF No. 3-12 ¶¶ 20-22); and impeding contractual responsibilities (ECF No. 3-10 ¶¶ 16-17). Finally, eliminating FMCS's public-sector services harmed plaintiff States, including by preventing States from using FMCS

---

[2] Plaintiffs initially moved for a temporary restraining order, which was converted to a preliminary injunction. (*See* ECF No. 31.)

6

to resolve ongoing labor disputes (ECF No. 3-26 ¶ 21); making future work stoppages in the States more likely (ECF No. 44-2 ¶ 15); and frustrating State laws and collective bargaining agreements that require use of FMCS services (ECF No. 3-39 ¶ 7).

Following briefing and oral argument, the district court concluded in a thorough forty-nine-page decision that plaintiffs were entitled to a preliminary injunction to prevent defendants from dismantling the three agencies at issue. (*See* Mem. & Order (Mem.) (May 6, 2025), ECF No. 57.) The district court found that plaintiffs had standing (*see id.* at 11), that the claims were ripe for judicial review (*id.* at 12-14), and that the court had jurisdiction over plaintiffs' claims, including where those claims implicated grant disbursements (*id.* at 14-18) and mass reductions in force (*id.* at 18-21). On the merits, the district court ruled that defendants' actions were reviewable under the APA (*id.* at 21-26), were likely arbitrary and capricious (*id.* at 26-31), contrary to law (*id.* at 31-39), and unconstitutional (*id.* at 39-40). The district court also held that plaintiffs established irreparable harm (*id.* at 41-45) and that the balance of the equities and public interest weighed in favor of injunctive relief (*id.* at 46-47).

The district court entered a preliminary injunction order that incorporated revisions to the wording of the order proposed by each side. The order directed defendants to, among other things, (i) reverse actions taken to implement the *Reduction* EO with respect to the three agencies; (ii) restore employees and personal service contractors who were involuntarily placed on leave or terminated due to the *Reduction* EO's implementation; and (iii) resume processing, disbursing, and paying funds to recipients in plaintiff States that were stalled or terminated because of the *Reduction* EO. (*See* ECF No. 60.)

Defendants moved for a stay pending appeal in the district court, relying on purportedly new information not previously presented to the district court. (*See* ECF No. 63.) The district court denied defendants' motion, explaining that the injunction was entered after all parties had the opportunity "to comment and to propose edits," was "narrowly limited to only the statutory and constitutional violations" shown, and "simply required the Defendants to follow Congressionally mandated programs and funding." (Order at 6-7 (June 5, 2025), ECF No. 67.)

## ARGUMENT

To obtain a stay pending appeal, the defendants must: "(1) make a strong showing that they are likely to succeed on the merits in their appeal; (2) show that they will be irreparably injured absent a stay; (3) show that issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) show that the stay would serve the public interest." *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) (quotation and alteration marks omitted). Of the four factors, the first two—likelihood of success and irreparable injury—"are the most critical." *Id.* at 66 (quotation marks omitted). Defendants have failed to show that *any* of the four factors favor a stay.

## I.    DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL

Contrary to defendants' contention, plaintiffs have standing, and neither the Tucker Act nor the Civil Service Reform Act (CSRA) bars plaintiffs' claims. As for the merits of plaintiffs' claims, defendants argue that they have not engaged in a reviewable agency action, but do not even attempt to rebut plaintiffs' showing that their actions are contrary to law and arbitrary and capricious. And although defendants dispute the scope

of the injunction, they *themselves* requested the precise language to which they now object, and do not propose alternative relief sufficient to redress plaintiffs' injuries.

## A.    Defendants' Jurisdictional Arguments Lack Merit.

### 1.    Plaintiffs have standing

To demonstrate Article III standing, plaintiffs must show that (i) they suffered an injury in fact, (ii) likely caused by the defendants, and (iii) likely redressable by judicial relief. *Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 84 (1st Cir. 2023). Here, the unrefuted evidence demonstrated that plaintiffs receive critical funds and services directly from IMLS, MBDA, and FMCS, and that defendants' actions have resulted in numerous actual and imminent injuries to plaintiffs, including the loss of awarded funding, the termination of trusted mediation services critical to resolving public-sector labor disputes, and disruptions in state library services. (Mem. at 13-14, 41-45.)

Defendants' arguments against standing before this Court (Mot. at 7-9) differ from the ones they made below (*see* ECF No. 41), and in any event ignore the district court's factual findings. The overwhelming record evidence disproves the assertion (Mot. at 8) that plaintiffs' injuries

are "abstract," *Raines v. Byrd*, 521 U.S. 811, 829 (1997), or "divorced from any concrete harm," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The challenged actions caused (among other things) the Maine State Library to close its doors for two weeks (ECF No. 44-1 ¶¶ 9-10), threatened to displace employees and students in Hawai'i (ECF No. 3-11 ¶¶ 16-17), and "dramatically increased the risk of an imminent work stoppage—with life-and-death consequences—at the busiest medical center in" Rhode Island (ECF No. 44-2 ¶ 15). Plaintiffs thus do not assert generalized grievances (Mot. at 8) about the separation of powers, but cite concrete harms caused by defendants' actions. And defendants "have submitted no evidence to support a contrary" factual finding. *Somerville Pub. Schs. v. McMahon*, No. 25-1495, 2025 WL 1576570, at *2 (1st Cir. June 4, 2025).[3]

---

[3] To be sure, a district court in the Fourth Circuit has held that plaintiff States lack standing to challenge an agency's staff reductions based on alleged future harm. *See Maryland v. Corporation for Nat'l & Cmty. Serv.*, No. 25-cv-01363, 2025 WL 1585051, at *20-22 (D. Md. June 5, 2025). Plaintiffs disagree that the harm alleged in that case was speculative or attenuated. But, in any event, the district court here made detailed factual findings based on "compelling evidence illustrating that the harms stemming from the dismantling of IMLS, MBDA, and FMCS are already unfolding or are certain to occur." (Mem. at 13-14.) While *Maryland* noted that a nonspecific challenge to agency dismantling is not subject to judicial review, here plaintiffs are challenging "a discrete, categorical

*(continued on the next page)*

Equally meritless is defendants' conclusory objection that the preliminary injunction "awards relief plaintiffs lack standing to pursue." Mot. at 8-9. Defendants identify no such relief. Moreover, defendants' complaints about the purported breadth of the order ring hollow because the district court "accepted all the Defendants' suggestions for ensuring that the injunction was narrowly drafted." (Order at 3 n.2.)

### 2. The Tucker Act does not divest the district court of jurisdiction

Contrary to defendants' contention (Mot. at 12-15), the Tucker Act does not divest federal courts of jurisdiction to hear plaintiffs' claims. As the district court properly found, the Supreme Court's brief emergency-docket order in *Department of Education v. California*, 145 S. Ct. 966 (2025), "does not render [the district court] an improper forum" for plaintiffs' APA claims. (Mem. at 15.)

*California* is not a ruling on the merits, *see Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring), and did not purport to disturb well-settled law channeling contract disputes to the Court of

---

policy" (Mem. at 22)—similar to the actions that *Maryland* found "ripe for judicial review," 2025 WL 1585051, at *13.

Federal Claims. (Mem. at 15-16.) Before *California* and now, a claim falls

within the Tucker Act's exclusive jurisdiction if it "is at its essence a

contract claim." *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir.

1982); *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96-97 (1st Cir.

2025). The "longstanding test" for evaluating a claim's essential character

under the Tucker Act hinges on (i) "the source of the rights upon which

the plaintiff bases its claims" and (ii) "the type of relief sought." *Crowley*

*Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir.

2022). As *California* reiterated, "a district court's jurisdiction 'is not barred

by the possibility' that an order setting aside an agency's action may

result in the disbursement of funds." 145 S. Ct. at 968 (quoting *Bowen v.*

*Massachusetts*, 487 U.S. 879, 910 (1988)).

Here, the district court correctly found (Mem. at 16) that plaintiffs'

claims do not arise from a contract dispute. A close review of plaintiffs'

complaint and the record confirms the district court's conclusions. The

legal rights on which plaintiffs base their claims "exist[ed] prior to and

apart from rights created under" grant agreements or any other contract

with the federal government. *See Crowley*, 38 F.4th at 1107 (quotation

marks omitted). Moreover, the challenged grant terminations comprised

only one facet of defendants' demolition campaign at the agencies. With respect to FMCS, plaintiffs' harms did not stem from grant terminations at all but from eliminating agency programs and dismantling key agency functions. (*See* ECF Nos. 3-32, 3-45.) Likewise, the harms from gutting MBDA manifested primarily in the agency's inability to perform its statutory functions, service existing MBDA centers, and issue new grant solicitations. (*See* ECF Nos. 3-10, 3-11, 3-41.) And grantmaking aside, IMLS could no longer perform research and data collection as required by statute. (*See* Compl. ¶ 83.)

That plaintiffs cite grant terminations as one component of harm does not transform this action into a contract dispute and thereby deprive the district court of jurisdiction it otherwise has. *See Megapulse*, 672 F.2d at 968; *Crowley*, 38 F.4th at 1106-07. Whatever the grant terms stipulate, defendants do not assert that they can (or do) supplant the statutory and constitutional duties underpinning plaintiffs' claims. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *10 (D.C. Cir. May 3) (Pillard, J., dissenting from grant of stay), *stay pending appeal denied*, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc) (the government "has not made the requisite 'strong showing' of a likelihood of success" on its

Tucker Act argument "substantially for the reasons explained by Judge Pillard"). Moreover, defendants do not dispute that the Court of Federal Claims would be incapable of affording plaintiffs the equitable relief they seek, or that plaintiffs' constitutional claims are properly before the federal courts.

Unsurprisingly, defendants cite no case applying *California* to oust a district court of jurisdiction over claims similar to those that plaintiffs assert. The cases defendants cite (Mot. at 13) involve claims expressly framed as breaches of contract, *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1363 (Fed. Cir. 2021), or, equivalently, "turn[ ] entirely on the terms of a contract," *Albrecht v. Committee on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004). By contrast, the district court's holding accords with a growing number of district courts in this Circuit to analyze *California* and reject the broad interpretation that defendants advance.[4]

_____

[4] *See, e.g.*, *Association of Am. Univs. v. Department of Energy*, No. 25-cv-10912, 2025 WL 1414135, at *6 (D. Mass. May 15, 2025); *Massachusetts v. Kennedy*, No. 25-cv-10814, 2025 WL 1371785, at *7-9 (D. Mass. May 12, 2025); *see also Maryland*, 2025 WL 1585051, at *27.

### 3. The Civil Service Reform Act does not divest the district court of jurisdiction

Defendants are also wrong to argue (Mot. at 15-17) that the CSRA precludes the district court from ordering the reinstatement of agency personnel to remedy plaintiffs' harms. The CSRA provides an avenue for "federal employees" who seek to challenge an employment decision. Mot. at 15-16. *See Somerville Pub. Schs.*, 2025 WL 1576570, at *4. The district court correctly concluded that the CSRA does not bar plaintiffs' claims. (*See* Mem. at 18-20.) Plaintiffs did not ask the court to review the propriety of employment actions; they alleged that defendants used mass terminations as a tool to dismantle the agencies.

As the district court noted, accepting defendants' preclusion argument under the CSRA would mean foreclosing all meaningful judicial review over all claims about agency action that involve personnel decisions (Mem. at 19). *See American Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-cv-3698, 2025 WL 1358477, at *15 (N.D. Cal. May 9, 2025). Defendants do not dispute this result, but suggest it counsels in favor of preclusion. *See* Mot. at 17. That position is "contrary to common sense," *Community Legal Servs. in E. Palo Alto*, No. 25-2808, 2025 WL 1393876, at *3 (9th Cir. May 14, 2025), and "patently absurd," *Wiley v.*

16

*Kennedy*, No. 2:25-cv-227, 2025 WL 1384768, at *11 (S.D. W. Va. May 13, 2025). This Court has rejected the "self-defeating" notion that the CSRA was "intended to bar every challenge to an unlawful effort by the Executive to shut down a statutorily created agency by summarily firing its employees en masse . . . except for those specific challenges that the terminated employees themselves may choose to bring." *Somerville Pub. Schs.*, 2025 WL 1576570, at *4.

Additionally, it is undisputed that plaintiffs' claims do not call for any expertise relevant to adjudging employee grievances under the CSRA. (Mem. at 20.) And plaintiffs' claims are "'wholly collateral' to CSRA's review provisions" because they "invoke constitutional and administrative questions" about the agencies' authority (or lack thereof) to dismantle themselves. (*Id.* at 20-21.) *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994).

**B.    Defendants' Actions Are Subject to Review Under the Administrative Procedure Act.**

A rational agency action must offer, at minimum, "genuine justifications for important decisions," so that they "can be scrutinized by courts and the interested public." *Department of Com. v. New York*, 588 U.S. 752, 785 (2019). As the district court correctly found, defendants' implementation of the *Reduction* EO likely violated the APA because it (i) gutted the agencies without offering any reasoned explanation, and (ii) violated multiple federal statutes through which Congress allocated specific functions and funds to the agencies. (*See* Mem. at 31-39.) This "was not a close call." (Order at 3.) Defendants do not defend these actions on the merits but contend that the actions should escape judicial review. Defendants waived these arguments by failing to make them in their stay motion before the district court, and the arguments are meritless in any event.

*First*, defendants are wrong in comparing this suit to the kind of "programmatic" challenge dismissed by the Supreme Court in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). *See* Mot. at 10. This action properly challenges defendants' "adoption of a discrete, categorical policy" implemented "across the board" at each agency, as the district

court found. (Mem. at 22.) That policy sought to effectuate the *Reduction* *EO* through large-scale elimination of agency operations. Like in *Somerville* *Public Schools*, defendants here fail to explain why the relevant actions fail to constitute "discrete agency action under the cases that they cite." 2025 WL 1576570, at *6 (quotation marks omitted). Indeed, *Lujan* itself recognized that if an agency applied "some particular measure across the board," then it could "of course be challenged under the APA." 497 U.S. at 890 n.2. Although defendants argue that their implementation efforts "involve[d] countless operational decisions" (Mot. at 10), this Court has rejected "the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once," *New York*, 133 F.4th at 68.

*Second*, defendants' actions constituted "final agency action" subject to judicial review under the APA because they marked the "consummation of [defendants'] decisionmaking process" and produced "legal consequences" for the parties. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotation marks omitted). The unrefuted evidence established that defendants adopted policies to severely curtail the agencies' operations by eliminating staff and ending services. (Mem. at 23-26.) These sweeping actions

19

had legal consequences for the States, which lost access to critical programs, grants, and services. (*See id.* at 26.) And it is undisputed that the challenged actions would leave the agencies unable to expend their statutory appropriations. Just as this Court found final agency action in funding freezes initiated across the federal government pursuant to an executive order, *see New York*, 133 F.4th at 68, so too here defendants' actions implementing the *Reduction* EO represent final agency action. *Contra* Mot. at 11.

Contrary to defendants' post hoc characterizations (*id.*), the challenged actions implementing the *Reduction* EO were unequivocal statements constituting final agency action. (*See, e.g.*, ECF No. 35-5 at 11 ("IMLS hereby terminates your grant in its entirety"); ECF No. 35-4 at 4 (MBDA employee's position "will be eliminated and you will be separated from the federal service"); ECF No. 1-4 at 2 (FMCS will not accept new public sector cases "[e]ffective [i]mmediately").) Once an agency expresses a definitive position that compels conformance, it forfeits "the

benefit of postponed judicial review." *Ciba-Geigy Corp. v. U.S. Env't Prot. Agency*, 801 F.2d 430, 436 (D.C. Cir. 1986).[5]

*Third*, defendants argue for the first time in this stay motion that the district court should have analyzed plaintiffs' APA claims as seeking to "compel agency action unlawfully withheld" (Mot. at 17 (quoting 5 U.S.C. § 706(1))). *See id.* at 17-19. This Court should follow its "settled practice not to address previously unraised arguments absent the most extraordinary circumstances." *Somerville Pub. Schs.*, 2025 WL 1576570, at *6 (quotation marks omitted). In any event, defendants are incorrect. Plaintiffs' APA claims are not limited to the agencies' failure to perform statutorily mandated functions. (*See* Mem. at 31, 35-39.) Moreover, plaintiffs' challenge is based on affirmative steps defendants took to implement the *Reduction* EO, not on subsequent omission of particular

---

[5] Defendants assert that certain grants were voluntarily restored before the preliminary injunction order was entered. Mot. at 11. Defendants fail to explain why these piecemeal actions justify a stay of the preliminary injunction in its entirety. "[A] defendant's voluntary cessation of putatively illegal or unconstitutional conduct will not moot a case, unless the defendant meets the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *In re Fin. Oversight & Mgmt. Bd.*, 16 F.4th 954, 961-62 (1st Cir. 2021) (quotation marks omitted). Defendants do not come close to meeting that burden here, even as to the grants that were restored.

action. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)

(explaining the difference between "failure to act" and "denial").

Even if defendants were right that § 706(1) applied, the same result

obtains. The district court identified multiple statutory commands that

defendants' actions likely violated, including each agency's appropriations

statutes. (*See* Mem. at 31-39.) Defendants have never attempted to argue

otherwise—effectively conceding the unlawfulness of their actions. So,

whether framed as a series of unlawful actions or unlawful failures to

act, the district court was "empowered to order a remedy." *N.A.A.C.P. v.*

*Secretary of Hous. & Urb. Dev.*, 817 F.2d 149, 161 (1st Cir. 1987).

## C.    Defendants' Actions Are Likely Unconstitutional.

The federal government has two elected branches: Congress, which

"makes laws," and the President, who "faithfully executes them." *Utility*

*Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014) (quotation and alteration

marks omitted). The Constitution vests "[a]ll legislative Powers" in

Congress. *See* U.S. Const. art. I, § 1. The executive branch has no authority

to enact, amend, or repeal statutes, and under the Take Care Clause, the

President must ensure that the laws are faithfully executed. *See Clinton*

*v. City of N.Y.*, 524 U.S. 417, 438 (1998). The President does not have—

22

under the Constitution or otherwise—the power to disregard or act contrary to statutes, even in an emergency. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).

Defendants wrongly contend that alleged statutory violations by the Executive cannot give rise to constitutional claims as a matter of law. *See* Mot. at 19. This argument—which plaintiffs failed to raise in their stay motion below and thereby forfeited, *see New Jersey*, 131 F.4th at 41-42—misreads *Dalton v. Specter*, 511 U.S. 462 (1994). The upshot of *Dalton* is this: when the President exercises discretion committed to him by statute, a claim that the President exceeded his statutory authority is not "ipso facto" a constitutional claim. *Id.* at 472-73. But here, defendants cannot have exceeded their statutory authority; they acted wholly without it. Plaintiffs' claims thus turn on "whether the Constitution authorized [defendants'] actions." *Id.* at 473. *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996) (distinguishing *Dalton*). As the district court properly concluded, defendants' attempts to dismantle the agencies through executive fiat usurped Congress's power to create and abolish federal agencies, disregarded funds that Congress appropriated, and failed to faithfully execute the laws Congress enacted. (Mem. at 39-40.)

23

## II.    DEFENDANTS HAVE NOT SHOWN IRREPARABLE INJURY

Defendants fail to demonstrate that they are irreparably harmed by complying with the preliminary injunction order. Having argued that economic harm cannot establish irreparable injury in opposing a preliminary injunction (Defs.' Opp'n to Pls.' Mot. for Emergency TRO at 32 (Apr. 14, 2025), ECF No. 41), defendants now rely on economic harm to justify a stay of the preliminary injunction. But defendants cannot show "that the Executive Branch suffers irreparable harm by being required to carry out Congress's duly enacted statutes." *Somerville Pub. Schs.*, 2025 WL 1576570, at *7.

Though defendants continue to speculate that they are "unlikely to recover" grant funds already disbursed (Mot. at 20 (quotation marks omitted)) if they ultimately prevail on appeal, their own evidence states that grant payments ultimately found to be unwarranted may be recovered through "debt collection procedures." (*See* ECF No. 63-2 ¶ 12.) Regardless, this Court has rejected the same argument. *See New York*, 133 F.4th at 72. And the en banc D.C. Circuit recently stayed an earlier panel decision that had credited the same argument defendants make here. *See Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735,

24

at *1 (D.C. Cir. May 7, 2025); *see Widakuswara*, 2025 WL 1521355 (finding no irreparable harm where, as here, "the government has not contended that it will ultimately prevail in establishing an entitlement to th[e] funds" at issue).

By contrast, the damage that defendants' actions inflicted on plaintiffs was severe, widespread, and unrebutted. Plaintiffs' preliminary injunction motion was supported by hundreds of pages of declarations detailing defendants' efforts to incapacitate the agencies and the consequent harms plaintiffs experienced and would continue to experience absent injunctive relief. (*See* Mem. at 45.) Defendants submitted no evidence to rebut plaintiffs' showing in the district court, and offer none here. Defendants do not contest that the mass firings rendered the federal agencies unable to properly function, which in turn threatened jobs, programs, and services in the States. The one-sided record of irreparable harm reinforces why a stay of the preliminary injunction is unwarranted.

## III.   THE REMAINING FACTORS WEIGH STRONGLY AGAINST A STAY

Lastly, defendants fail to show that the balance of the equities and the public interest favor a stay. Defendants introduce new arguments based on declarations about the agencies' operations (Mot. at 20), but such evidence was not presented to the district court during briefing on the preliminary injunction motion and any such arguments have therefore been waived. *See New Jersey*, 131 F.4th at 41-42.

At any rate, as this Court recently observed, "'there is generally no public interest in the perpetuation of unlawful agency action.'" *Somerville Pub. Schs.*, 2025 WL 1576570, at *8 (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The public interest is particularly disserved by a stay here because defendants seek to resume unlawful actions they do not defend on the merits. Defendants' repeated invocation of the executive branch's "judgment" and "staffing decisions" (Mot. at 20) ignores the district court's finding that defendants' actions contravened multiple statutory and constitutional provisions, including the agencies' obligations to expend funds appropriated by Congress. (*See* Mem. at 2.)

Moreover, a stay of the preliminary injunction would "substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at

426; *see Somerville Pub. Schs.*, 2025 WL 1576570, at *8. Plaintiff States rely on receiving direct funds and critical services from IMLS, MBDA, and FMCS. (Mem. at 29-31.) In Rhode Island, FMCS ensures labor peace in the healthcare industry (ECF No. 3-32 ¶ 10), and plaintiffs explained in their preliminary injunction motion that labor negotiations with Butler Hospital were "extremely likely to lead toward a strike without the benefit of FMCS mediation" (ECF No. 3-45 ¶ 14). That strike is now in full effect, illustrating the real-world consequences of unlawful agency action. The stay that defendants now seek would perpetuate the "plethora of injuries" to plaintiff States that the district court's injunction sought to forestall. (Mem. at 46.)

## CONCLUSION

The Court should deny a stay pending appeal.

Dated:  New York, New York
        June 9, 2025

Respectfully submitted,

PETER F. NERONHA
 *Attorney General of Rhode Island*

*/s/ Natalya A. Buckler*
KATHRYN M. SABATINI
 *Chief, Civil Division*
 *Special Assistant Attorney General*
KATHERINE CONNOLLY SADECK
 *Solicitor General*
KEITH D. HOFFMANN
 *Chief of Policy*
 *Assistant Attorney General*
NATALYA A. BUCKLER
 *Assistant Attorney General*
PAUL MEOSKY
 *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903


ANNE E. LOPEZ
 *Attorney General of Hawaiʻi*

*/s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY
 *Special Assistant to*
 *the Attorney General*
KALIKOʻONĀLANI D. FERNANDES
 *Solicitor General*
425 Queen Street
Honolulu, HI 96813


*(Counsel listing continues on following page.)*

LETITIA JAMES
 *Attorney General of New York*

*/s/ Kartik Naram*
BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
KARTIK NARAM
 *Assistant Solicitor General*
28 Liberty Street
New York, NY 10005
(212) 416-6347

KRISTIN K. MAYES
 *Attorney General of Arizona*

/s/ *Syreeta A. Tyrell*
SYREETA A. TYRELL
 *Assistant Attorney General*
2005 North Central Avenue
Phoenix, AZ 85004

ROB BONTA
 *Attorney General of California*

/s/ *Jay C. Russell*
JAY C. RUSSELL
 *Deputy Attorney General*
THOMAS S. PATTERSON
 *Senior Assistant Attorney General*
ANYA M. BINSACCA
 *Supervising Deputy*
  *Attorney General*
ZELDA VASSAR
 *Deputy Attorney General*
455 Golden Gate Avenue,
  Suite 11000
San Francisco, CA 94102

PHILIP J. WEISER
 *Attorney General of Colorado*

/s/ *David Moskowitz*
DAVID MOSKOWITZ
*Deputy Solicitor General*
1300 Broadway, #10
Denver, CO 80203

WILLIAM TONG
 *Attorney General of Connecticut*

/s/ *Ashley Meskill*
ASHLEY MESKILL
 *Assistant Attorney General*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
 *Attorney General of Delaware*

/s/ *Vanessa L. Kassab*
IAN R. LISTON
 *Director of Impact Litigation*
VANESSA L. KASSAB
 *Deputy Attorney General*
820 North French Street
Wilmington, DE 19801

KWAME RAOUL
 *Attorney General of Illinois*

/s/ *Holly F.B. Berlin*
HOLLY F.B. BERLIN
 *Assistant Attorney General*
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
  *Attorney General of Maine*

*/s/ Vivian A. Mikhail*
Vivian A. Mikhail
Deputy Attorney General
6 State House Station
Augusta, ME 04333-0006

ANTHONY G. BROWN
  *Attorney General of Maryland*

*/s/ Keith M. Jamieson*
JULIA DOYLE
 *Solicitor General*
KEITH M. JAMIESON
 *Assistant Attorney General*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

ANDREA JOY CAMPBELL
  *Attorney General of Massachusetts*

*/s/ Katherine Dirks*
KATHERINE DIRKS
*Chief State Trial Counsel*
One Ashburton Place, 20th Floor
Boston, MA 02108

DANA NESSEL
 *Attorney General for*
  *People of Michigan*

*/s/ Neil Giovanatti*
NEIL GIOVANATTI
BREANNA LISTERMANN
 *Assistant Attorneys General*
525 West Ottawa
Lansing, MI 48909

KEITH ELLISON
  *Attorney General of Minnesota*

*/s/ Jacob Harris*
JACOB HARRIS
 *Assistant Attorney General*
445 Minnesota Street, Suite 600
St. Paul, MN 55101

AARON D. FORD
  *Attorney General of Nevada*

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN
 *Solicitor General*
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119

MATTHEW J. PLATKIN
  *Attorney General of New Jersey*

*/s/ Joshua Bohn*
JOSHUA BOHN
MAX LESSER
 *Deputy Attorneys General*
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
  *Attorney General of New Mexico*

*/s/ Anjana Samant*
ANJANA SAMANT
 *Deputy Counsel for*
  *Impact Litigation*
P.O. Drawer 1508
Santa Fe, NM 87504

30

DAN RAYFIELD
  *Attorney General of Oregon*

*/s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL
  *Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201

CHARITY R. CLARK
  *Attorney General of Vermont*

*/s/ Ryan P. Kane*
RYAN P. KANE
  *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609

NICHOLAS W. BROWN
  *Attorney General of Washington*

*/s/ Kate S. Worthington*
KATE S. WORTHINGTON
SARAH E. SMITH-LEVY
  *Assistant Attorneys General*
7141 Cleanwater Drive SW
P.O. Box 40111
Olympia, WA 98504

JOSHUA L. KAUL
  *Attorney General of Wisconsin*

*/s/ Colin T. Roth*
COLIN T. ROTH
  *Assistant Attorney General*
P.O. Box 7857
Madison, WI 53707

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Ava Mortier, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 5,200 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

*/s/ Ava Mortier*